IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:20-cr-142 |
| MELVIN PALMA FLORES, | Hon. Rossie D. Alston, Jr. |
| *Defendant*. | Sentencing: June 29, 2022 |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The defendant, Melvin Palma Flores, comes before the Court for sentencing after conviction by a jury at trial of the premeditated murder of Xyqwavius "Qwa" Brown, a murder committed over just an ounce of marijuana. The defendant has been found guilty of all three counts of the Second Superseding Indictment, which charge the defendant with possession with the intent to distribute marijuana, using a firearm in furtherance of drug trafficking resulting in death by first-degree murder, and witness tampering. The United States has no objection to the Probation Officer's calculations of the defendant's Sentencing Guidelines, as set forth in the Presentence Investigation Report (PSR) (ECF No. 97) in paragraphs 30–43 and Part D.

The defendant's Guidelines call for life in prison. As set forth below, however, based on the nature and circumstances of the offense, along with the history and characteristics of the defendant, the United States respectfully recommends that the Court impose a sentence of imprisonment of 50 years.

### BACKGROUND

In the early morning hours of October 26, 2019, officers from the Fairfax County Police Department (FCPD) responded to an apartment complex in Hybla Valley in Alexandria after 911

calls came in reporting a shooting. There, they discovered Qwa Brown, bleeding from gunshot wounds, and slumped at the bottom of the stairs of his apartment building, where he lived with his grandmother. Brown was transported to the hospital, where he died from his wounds. His death was ruled a homicide, and the cause of death was determined to be a gunshot wound to his head.

In the ensuing investigation, FCPD investigators identified the defendant as a possible suspect. They learned that the defendant was engaged in the business of selling relatively small amounts of marijuana in Fairfax County, Virginia. A review of the defendant's social media presence revealed that the defendant had a penchant for posting images depicting the marijuana he sold, his cash proceeds, and multiple guns and ammunition that he used to protect himself, his marijuana, and his money.

The investigation further revealed, as the evidence bore out at trial, that on the day prior to the shooting, Qwa Brown had set up the defendant to robbed of a "zip" (an ounce) of marijuana. Elijah Kyle-Canady and another individual met the defendant behind the defendant's house, under the guise of purchasing the bag of marijuana. The other individual snatched the marijuana from the defendant and ran off without paying, leaving Kyle-Canady standing with the defendant. The defendant in turn pulled a black pistol from his pants, hesitated, and then went back into his residence.

Later that evening, the defendant came up with a plan to get back at Brown for setting him up for a robbery. The defendant used his phone to log in to the Snapchat account of a mutual friend, Kollin Worlds, to lure Brown out from his grandmother's residence. He arranged to meet up with his girlfriend, Laila Sheehy, so he could take her car—a vehicle not registered to him or any of his family members—to Brown's apartment complex. The defendant, Worlds, and Sheehy

made their way in Sheehy's car to Brown's apartment complex, all while the defendant was posing as Worlds on Snapchat to communicate with Brown.

When the trio arrived at the apartment complex, the defendant directed Sheehy to park up a hill a short distance away from Brown's apartment building. The defendant got out of the car and strode down the hill to the building, where he encountered Brown sitting at the top of the stairs. Within moments, and without provocation, the defendant fired three shots at Brown. One struck Brown in the upper right arm, and a second, as Brown doubled over, hit Brown squarely in the top of his head, penetrating and fracturing Brown's skull. The defendant ran, leaving Brown to die.

Later that night, the defendant contacted his cousin, Hector, and asked Hector to meet him outside Hector's residence with a lighter. There, Hector witnessed the defendant burn an article of clothing above a storm drain near Hector's residence. When Hector asked the defendant, some time later, why he had burned clothes, the defendant admitted to Hector that it was because he had murdered someone.

The defendant was arrested for assaulting his girlfriend, Sheehy, after she tried to contact the police about what had happened. On February 19, 2020, he was arrested on federal charges related to the shooting. While the defendant was in custody awaiting trial in this matter at the Alexandria Adult Detention Center, he arranged for a letter to Sheehy to be smuggled out of the jail by another inmate who was released. In this letter, the defendant detailed a plan for Sheehy to lie, to change her testimony, and to get others to lie for the defendant by blaming the shooting on Worlds. Sheehy eventually provided the letter to the police.

The defendant has never accepted responsibility for his actions. To the contrary, he took the stand during his trial and tried to blame the shooting on Worlds. He has never expressed an

ounce of remorse or empathy for Qwa Brown's grandmother, Joyce Brown, or any of Mr. Brown's family or friends.

## SENTENCING RECOMMENDATION

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *Ibid* at 264; *see also United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]" *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B); *Biheiri*, 356 F. Supp. 2d at 594. Applying the § 3553(a) factors to the facts of this case demonstrates that a term of incarceration of 50 years is appropriate and reasonable.

A.  **Nature and Circumstances of the Offense**

The defendant ambushed, shot, and killed Qwa Brown over a $200 bag of marijuana. He tried to prevent his girlfriend from going to the police by assaulting her. PSR ¶¶ 22–23. Then,

4

instead of accepting responsibility for the murder, the defendant attempted to avoid responsibility for his actions by orchestrating a plot to blame Kollin Worlds for the murder. The defendant's conduct has caused a family immeasurable grief, as reflected in the letters submitted by Brown's grandmother and aunt. The defendant robbed Brown of any opportunity to grow into a man, to learn for his mistakes, or to contribute to his family or the community. There can be no punishment that adequately addresses this result. The Court's sentence, however, must demonstrate that the criminal justice system respects human life. A sentence of 50 years of incarceration will adequately address the tragic nature and circumstances of the defendant's crimes.

### B.  History and Characteristics of the Defendant

The defendant's 18th birthday was on October 17, only nine days prior to the day he murdered Brown. He has no prior adult criminal history. This case, however, does not represent the defendant's first contact with the criminal justice system. As a juvenile, the defendant racked up several arrests and convictions, including making threats, breaking and entering, petit larceny, assault and battery on a family member, and violating the terms of court supervision. PSR ¶¶ 44–46, 53–54.

### C.  Need for Deterrence

While the sentence imposed cannot address the consequences of the defendant's criminal actions, the United States respectfully asks the Court to impose a sentence that will prevent the defendant from ruining any more lives. The defendant's actions in this case evidence the fact that he is violent, unpredictable, and self-centered. As he has never accepted responsibility for a deadly crime that he obviously committed, he remains a danger to the community. Contrition and acceptance of responsibility are necessary precursors to redemption, and the defendant has demonstrated neither. As such, the prevailing sentencing factor should be the need to deter this

defendant for the sake of protecting the community. A sentence of 50 years of incarceration will provide that protection. Such a sentence will ensure that for the next five decades, the defendant will not be in a position to rob anyone else of their chance at redemption.

### D. Unwarranted Sentencing Disparities

A sentence of 50 years in prison falls below the sentence of life imprisonment recommended by the United States Sentencing Guidelines. Given the facts of the case and the defendant's age, such a sentence is appropriate. It is in line with other individuals convicted in this district. In *United States v. Marvin Wayne Williams*, *et. al*, 1:09-cr-414 (JCC), two of the defendants, Freddie Wigenton and Deshawn Anderson, were juveniles at the time they participated in the murder of Kyle Turner in Woodbridge, Virginia. Turner was targeted because he took issue with the PCP he had bought from Williams, Wigenton, and Anderson. After trial, all three defendants were convicted of conspiracy to distribute controlled substances and using firearms to murder Kyle Turner in furtherance of drug trafficking. The Court imposed a total sentence of 50 years on all three defendants, a downward departure from the applicable sentencing guidelines recommendation of life in prison.

Imposing a similar sentence here would be fair in that it would address the nature and circumstances of the defendant's deadly conduct, give the defendant credit for his age, protect the community, and remain in line with sentences imposed on similar defendants for similar conduct.

## CONCLUSION

A term of incarceration of 50 years will not bring Qwa Brown back to his grandmother or his mother, but it would balance the deadly nature of this offense with the history and characteristics of this defendant. For all the reasons stated above, the government submits that a sentence of 50 years' imprisonment will reasonably and appropriately account for all the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Michael P. Ben'Ary
Katherine E. Rumbaugh
Assistant United States Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to counsel of record in this case; and I will further forward an electronic copy to Senior United States Probation Officer Kelly M. Smihal.

        /s/
Katherine E. Rumbaugh
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703) 299-3700
Fax: (703) 299-3980
katherine.rumbaugh@usdoj.gov